UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY S. JAMESON, et al., | CASE NO.   1:03-cv-5593-LJO-MJS (PC) |
| Plaintiffs, | ORDER THAT PLAINTIFF IS TO FILE A SIXTH AMENDED COMPLAINT OR NOTIFY THE COURT THAT HE IS WILLING TO PROCEED ONLY ON HIS MEDICAL CARE CLAIM |
| v. | |
| SCOTT RAWERS, et al., | |
| Defendants. | (ECF No. 31) |
| / | PLAINTIFF'S RESPONSE DUE NOT LATER THAN APRIL 15, 2011 |

**<u>SCREENING ORDER</u>**

Plaintiff Barry S. Jameson ("Plaintiff") is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.[1] Plaintiff initiated this action on May 12, 2003. (ECF No. 1.) He has been granted leave to amend his complaint four times—three times on his motion and once at the Court's request.

---

[1] Plaintiff's Fifth Amended Complaint included three additional Plaintiffs. However, the Court severed the claims. Plaintiff Jameson is the only plaintiff remaining in this action.

Before the Court for screening is Plaintiff's April 20, 2006 Fifth Amended Complaint.[2] (ECF No. 31.)

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Though Plaintiff has filed five complaints in this action, none of those have been substantively screened by the Court.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Facial plausibility demands more than the mere possibility that a defendant committed

---

[2] After Plaintiff filed his Fifth Amended Complaint, the Court denied Plaintiff in forma pauperis status based on his litigation history pursuant to 28 U.S.C. § 1915. (ECF No. 39.) Plaintiff appealed and, in 2010, the Ninth Circuit reversed and remanded to the Court for further proceedings. (ECF Nos. 53-55.)

misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

## II. SUMMARY OF COMPLAINT

At the time Plaintiff filed his Fifth Amended Complaint, he was incarcerated at Pleasant Valley State Prison ("PVSP") in Coalinga, California. Prior to his confinement at PVSP, he had been incarcerated at Avenal State Prison ("ASP"). In his six-count Complaint, Plaintiff seeks monetary damages and injunctive relief from various defendant prison officials at both facilities.

Count One alleges that prison guards and administrative officials at ASP violated Plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment rights by inciting inmate violence and failing to protect him from that violence. (Fifth Am. Compl. pp. 6-14.) Plaintiff claims that Defendants were aware that two factions of prisoners within the Administrative Segregation Unit ("ASU") were enemies and that any interaction between the factions would result in violence. Despite this knowledge, prison officials assigned inmates of the rival factions to the same exercise yard and released inmates from the warring factions into the yard at the same time for the purpose of inciting violence.

On January 6, 2003, Plaintiff was released into the exercise yard at the same time as a number of members of the rival faction. A fight broke out and Plaintiff suffered scrapes and bruises, a broken hand, and broken ribs. Plaintiff was also struck in the head by an "exact impact bullet" shot by a guard. The Defendants named in the first cause of action are various guards and administrative officials at ASP.

Count Two alleges that Plaintiff was denied medical care following the above-described incident. (Fifth Am. Compl. pp. 13-18.) Among other things, he claims that his

injured hand was not x-rayed for at least five weeks after the incident and that, even after x-rays showed that his hand was broken, he received no treatment or pain medication. He claims his hand is permanently disfigured and causes significant pain. Plaintiff also alleges that he suffers from headaches as a result of a "dent" in his skull from the bullet. The Defendants named in the second cause of action are various prison guards and medical personnel at ASP.

Count Three alleges ongoing violations of Plaintiff's right to access to the courts. (Fifth Am. Compl. pp. 19-31.) He complains that when he was housed at ASP, he was only given access to the law library one to two hours once a month. He alleges that his multiple grievances on this issue were ignored by prison authorities. He claims that his frustration with the resulting inability to prosecute his ongoing legal actions caused him significant stress and contributed to a rise in his blood pressure. Plaintiff's problems accessing the law library continued after his transfer to PVSP. The Defendants named in Plaintiff's third cause of action are correctional officers at both PVSP and ASP.

Count Four alleges that Plaintiff was denied basic necessities such as soap and toilet paper during his confinement at PVSP. He claims that he was forced to use soiled bed sheets for toilet paper and has been denied soap or cleaning products for his cell. Plaintiff alleges that his grievances and appeals regarding the condition of his cell and the lack of access to basic necessities were ignored by prison officials. The Defendants named in Plaintiff's fourth cause of action are various administrators at PVSP.

Count Five alleges that Plaintiff was denied access to the courts when guards and staff at PVSP refused to mail his legal documents and interfered with his incoming mail. (Fifth Am. Compl. pp. 35-44.) Plaintiff also claims that PVSP's policy of allowing indigent

prisoners only five envelopes a week interferes with his ability to prosecute his ongoing legal actions. Plaintiff filed a number of grievances and appeals related to this issue; all of which were denied and/or improperly processed. The Defendants named in the fifth cause of action are guards, staff, and administrators at PVSP.

Count Six alleges that Plaintiff's constitutional rights were violated when PVSP officials refused to process and answer his grievances in accordance with statutory mandates. (Fifth Am. Compl. pp. 45-47.) He claims that many of his grievances and appeals were improperly screened out and that he was denied relief to which he was entitled. The Defendants named in the sixth cause of action are guards, staff, and administrators at PVSP.

### III.   ANALYSIS

#### A.   Rule 20 and Plaintiff's Unrelated Claims

Pursuant to Federal Rule of Civil Procedure 20(a), individuals may be joined in one action as defendants if any right to relief asserted against them arises out of the same transaction, occurrence, or series of transactions and occurrences, and any question of law or fact common to all defendants will arise in the action. See also George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against unrelated defendants belong in different suits"). If unrelated claims are improperly joined, the Court may dismiss them without prejudice. Fed. R. Civ. P. 21; 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1684 at 484 (2001); Michaels Building Co. V. Ameritrust Co., 848 F.2d 674, 682 (6th Cir. 1988) (affirming dismissing under Rule 21 of certain defendants where claims against those defendants did not arise out of the same transaction or occurrences, as required by Rule 20(a)).

Having reviewed the six claims asserted in the Fifth Amended Complaint, the Court finds that they do not all arise from the same transaction, occurrence, or series of transactions or occurrences. Claims One and Two arise out of a January 6, 2003 attack on Plaintiff by inmates and guards at ASP and the resulting medical care (or lack thereof) by medical personnel at ASP. Claims Three through Six arise out of incidents that occurred at a different prison facility, are asserted against different Defendants, and are materially different in nature than those asserted in Claims One and Two.

The Court cannot allow Plaintiff's unrelated claims to proceed in the same action. See Fed. R. Civ. P. 20, 21. The Court will permit Plaintiff to pursue in the current action only Counts One and Two—those related to the January 6, 2003 attack on Plaintiff and his medical care thereafter. Plaintiff's remaining claims will be dismissed without prejudice to Plaintiff asserting them in a separate action.

**B.     Plaintiff's Claims**

In Counts One and Two of his Fifth Amended Complaint, Plaintiff alleges: During 2002 and 2003 in the ASU at ASP, two antagonistic factions of prisoners shared the same exercise yard. Hostilities between these two factions caused at least three riots and multiple smaller inmate fights. Prison guards routinely released prisoners from opposing factions onto the yard together knowing that violence would immediately ensue; they did this so that they could "watch the videos of the incidents while cheering and laughing; clearly enjoying the shows of human suffering." (Fifth Am. Compl. p. 13.)

Plaintiff was transferred to the ASU on December 18, 2002. He went before the Institutional Classification Committee ("ICC") and was asked if he had any problems with inmates of another race. Plaintiff responded that he did not. On January 5, 2003, Plaintiff

was assigned to CC3 exercise yard and told that it was a "compatible" yard—meaning he had no known enemies on this yard. (Fifth Am. Compl. pp. 8-9.)

On January 6, 2003, Plaintiff was released into his exercise yard with his cell mate and another member of his faction. Moments later, five members of the other faction were released onto the same yard. The factions immediately began fighting and the guards opened fire with "exact impact rounds." (Fifth Am. Compl. p. 11.) Plaintiff suffered cuts to his face, fractured ribs, and a broken hand, and was shot in the left side of his skull with an exact impact round. Despite multiple requests, Plaintiff received negligible medical care for his injuries.

Based on these facts, Plaintiff alleges that his Fourth, Fifth, Eighth, and Fourteenth Amendment rights were violated. The Court will address each of these contentions in turn below.

### 1. Fourth Amendment

The Fourth Amendment protects an individual's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. The Ninth Circuit has held that the Fourth Amendment "extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context." Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997).

Plaintiff does not allege that he was subjected to a search or a seizure. Accordingly, he has failed to state a claim for a Fourth Amendment violation. Given the facts alleged by Plaintiff, the Court finds that amendment of this claim would be futile. Plaintiff is not permitted to assert this claim if he files an amended complaint.

### 2. Fifth Amendment

The Fifth Amendment protects one's right to be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "[T]he Fifth Amendment's due process clause applies only to the federal government." Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008). None of the Defendants named in Plaintiff's Fifth Amended Complaint are federal actors. As such, Plaintiff fails to state a fifth amendment claim. The Court finds that amendment of this claim would be futile. Plaintiff is not permitted to assert this claim if he files an amended complaint.

### 3. Fourteenth Amendment

The Fourteenth Amendment extends the protections of the Fifth Amendment's Due Process Clause to the state. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners are entitled to certain processes before they are subjected to administrative or disciplinary hearings and classifications. For example, before being placed in disciplinary segregation, due process dictates that a prisoner is entitled to: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. Id. at 563-70.

Plaintiff alleges that he was called before the ICC at least once. While he contends that the ICC hearing resulted in him being placed in a yard that was not safe for him, he fails to allege any deficiency with the manner in which his ICC hearing was conducted. Plaintiff has therefore failed to state a Fourteenth Amendment claim. Moreover, because

a claim regarding the propriety of his ICC hearing would not arise out of the same transaction, occurrence, or series of occurrences as the claims at issue in this case, Plaintiff may not amend his Fourteenth Amendment claim in this action. This ruling does not preclude Plaintiff from bringing a Fourteenth Amendment claim related to his ICC hearing in a separate action if he determines it to be appropriate to do so.

### 4. Eighth Amendment

The Eighth Amendment protects prisoners from "cruel and unusual punishment." U.S. Const. amend. VIII. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Plaintiff alleges that his Eighth Amendment rights were violated when Defendants deliberately released him onto the prison yard with known enemies and failed to provide sufficient medical treatment.

#### a. Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Hoptowit, 682 F.2d at 1250-51; Farmer, 511 U.S. at 833 (1994). To establish a violation of this duty, the inmate must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmate's safety. Farmer, 511 U.S. at 834. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently

serious . . ." Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." Id. at 837.

Plaintiff alleges that he was attacked by other prisoners on January 6, 2003 and suffered serious injuries as a result of this attack. The Court finds that this is a sufficiently serious deprivation of Plaintiff's right to be free from physical harm to satisfy the objective prong of the deliberate indifference standard.

However, Plaintiff has failed to allege sufficient facts to show that any particular Defendant knew of and disregarded an excessive risk to his health or safety. While Plaintiff states that there were two rival factions in the ASU yard, he fails to describe them or anything about them in a way to suggest that any Defendant appreciated the difference between them or knew that Plaintiff was a member of one and not the other. If the distinction between the two were based on race, Plaintiff told committee members during his classification hearing that he had no problems with inmates of other races. Moreover, while Plaintiff describes several riots and fights between prisoners, he does not state that he was involved in any attacks other than the January 6, 2003 incident, that he was previously threatened or had any known enemies in the yard, or that prior to January 6, 2003, any Defendant knew or should have known that Plaintiff's personal safety would be threatened by releasing other prisoners onto the yard at the same time as him.

In Robinson v. Prunty, 249 F.3d 862 (9th Cir. 2001), the plaintiff alleged that prison guards knowingly released him onto the exercise yard with hostile inmates on two occasions. During the first incident, the guards watched the fighting between plaintiff and another inmate for five minutes before intervening. On the second occasion, plaintiff was

in the prison yard and a hostile prisoner was about to be let in. The guards asked plaintiff if tear gas would aggravate his asthma and joked that plaintiff needed to let the other prisoner get all the way into the yard before attacking him. As soon as the other prisoner entered the yard, a fight ensued.

The Ninth Circuit held that the plaintiff had stated a claim for deliberate indifference to his safety stating:

> [Plaintiff's] evidence paints a gladiator-like scenario, in which prison guards are aware that placing inmates of difference races in the yard at the same time presents a serious risk of violence outbreaks. The defendants' awareness of and indifference to this risk is demonstrated by the alleged frequency with which such outbreaks occur, by the alleged jokes made by the guards to [plaintiff] before they released a Mexican-American inmate into the yard with him, and by the alleged fact that guards failed to intervene while [plaintiff] was attacked by another inmate.

Id. at 868.

Plaintiff's allegations in this case are similar in many ways—Plaintiff also paints a picture of gladiator-like fights in which the guards were joking and laughing about prisoner violence. However, Plaintiff's allegations are materially different with respect to the guards' knowledge of potential harm specific to Plaintiff. Plaintiff's Fifth Amended Complaint is heavy in background information and facts related to general conditions in ASP's ASU during 2002 and 2003. However, it is short on specifics relating to the threat to Plaintiff's safety and Defendants' knowledge as to that threat. There is no allegation that any Defendant made a joke to Plaintiff before the January 6, 2003 incident. There is no allegation that prison guards and other employees gathered to watch the January 6, 2003 attack. Plaintiff fails to include facts indicating Defendants knew that an attack was likely to occur when the five inmates were allowed onto the exercise yard with Plaintiff, his

cellmate, and another prisoner on January 6, 2003. As such, he has failed to allege Defendants knew of and disregarded an excessive risk to his personal safety.

Because it appears that Plaintiff could state a claim for failure to protect, the Court will grant him leave to amend this claim. If Plaintiff chooses to amend this claim, he should focus on his personal claims and his basis for claiming that any of the Defendants knew or even should have known—prior to January 6, 2003—that there was a substantial risk of harm to his personal safety if he was released on to the prison yard with certain other inmates. General background information may be relevant to showing such. However, Plaintiff should provide detail about his particular situation and the particular events surrounding the January 6, 2003 attack if he believes, given the standards described here, that the facts specific to him and Defendants support his claim.

b.  Medical Care

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a

prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Further, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim," Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted), and a difference of opinion between medical personnel regarding treatment does not amount to deliberate indifference, Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). A plaintiff must allege sufficient facts to support a claim that "the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

On January 10, 2003, Plaintiff saw Defendant Perry for the injuries he sustained as a result of the January 6 attack. Plaintiff showed Perry his broken ribs, broken hand, and the dent in his skull (and resulting swelling) as a result of being hit and knocked unconscious by the projectile round. Though Perry's treatment for Plaintiff's injuries is not entirely clear from the allegations in the Complaint, Defendant Perry apparently declined

to order pain medication for Plaintiff or reset his broken hand.

Plaintiff then filed an administrative appeal asking for some medication that would allow him to sleep. Plaintiff's appeal was granted and he was seen by Dr. Perry one week later. Dr. Perry refused to give Plaintiff any pain medication stating that in his opinion the proper course of treatment for Plaintiff's injuries did not include medication. Plaintiff was left to sleep with broken ribs on a steel bed covered only by a one-inch mattress.

On January 23, 2003, Plaintiff submitted a formal appeal complaining about his injuries and asking for x-rays and an MRI on his hand. He also complained of constant headaches from the bullet injury. Plaintiff's hand was finally x-rayed in February 2003—at least five weeks after it was injured. During this appointment, Plaintiff asked the x-ray technician if she could also x-ray his skull; she said the order was for his hand only. The x-ray technician informed Plaintiff that his hand was broken in several places and asked why he had waited so long to have it checked.

Plaintiff filed the next level of his medical appeal on February 22, 2003. He saw Defendant Dr. Rees on March 23, 2003. Dr. Rees looked at Plaintiff's hand and told him to keep exercising it. Dr. Rees also felt the dent in Plaintiff's skull but did nothing to treat it. Dr. Rees noted that Plaintiff had been scheduled to see an "orthodonist"[3] on March 5, 2003, but that, according to his file, Plaintiff had refused the appointment. Plaintiff alleges he was in his cell on March 5, was never informed of the appointment and never refused any appointment.

Aside from having his hand x-rayed on three different occasions, Plaintiff received

---

[3] The Court questions whether Plaintiff intended to say "orthopedist" since Plaintiff alleges musculoskeletal injuries (which are treated by orthopedics) rather than injuries to his teeth (which are treated by orthodontists).

no medical care for his injuries. He never received pain medication and his broken bones were not reset. Plaintiff's hand is now disfigured; his small finger does not function properly and is chronically painful. He has received no treatment for the dent in his skull and he has chronic headaches that cause blurring in his left eye.

Taking Plaintiff's allegation as true, as it must at this stage of the proceedings, the Court finds that Plaintiff has stated an Eighth Amendment claim against both Drs. Rees and Perry. He has alleged sufficient facts to show that both were aware of serious medical conditions (broken bones and head injuries) and that both failed to treat such injuries. However, Plaintiff has failed to state a medical care-related claim against any other Defendants. Plaintiff may amend this claim to provide additional facts about the care, or lack thereof, by other Defendants.

**IV.    CONCLUSION**

Plaintiff's Fifth Amended Complaint states a claim against Defendants Rees and Perry for deliberate indifference to Plaintiff's serious medical needs, but does not state a claim for failure to protect against any of the named Defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only against Defendants Rees and Perry on his medical care claim, Plaintiff may so notify the Court in writing, and his failure to protect claim and his claim against all other Defendants will be dismissed. Plaintiff will then be provided with two summonses and two USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendants Rees and

Perry.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named Defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). He may also not reallege any of the counts dismissed by the Court in this order.

Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567.

Based on the foregoing, it is HEREBY ORDERED that:

1. Counts Three, Four, Five, and Six of Plaintiff's Fifth Amended Complaint are DISMISSED without prejudice;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Not later than April 15, 2011, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended

complaint and is willing to proceed only against Defendants Rees and Perry on his medical care claim; and

      3.    If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   March 8, 2011                              /s/ *Michael J. Seng*
                                                   UNITED STATES MAGISTRATE JUDGE