UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY S. JAMESON,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SCOTT P. RAWERS, et al.,<br><br>　　　　　　　　Defendants.<br>_____/ | CASE NO. 1:03-cv-05593-LJO-MJS PC<br><br>FINDINGS AND RECOMMENDATIONS FOR DENIAL OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 91 & 95)<br><br>FOURTEEN-DAY OBJECTION DEADLINE |

I.   **PROCEDURAL HISTORY**

　　Plaintiff Barry S. Jameson, a state prisoner proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 12, 2003.  The action proceeds against Defendants Rees and Perry on Plaintiff's claim that while incarcerated at Avenal State Prison, these Defendants provided him with inadequate medical care in violation of his rights under the Eighth Amendment to the United States Constitution. (ECF Nos. 31, 62, 72, 83.)

　　Pending before the Court is Plaintiff's motion for summary judgment filed May 29, 2012. (Pl.'s Mot. Summ. J., ECF No. 91.)  Defendants filed an opposition and cross-

motion for summary judgment July 5, 2012. (Defs.' Opp'n and Mot. Summ. J., ECF No. 95.) Pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012) and Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), the Court notified Plaintiff of his rights, obligations and methods for opposing Defendants' motion for summary judgment. (ECF No. 99.) On July 27, 2012 Plaintiff filed a reply (Pl.'s Reply, ECF No. 103) in connection with his motion for summary judgment and an opposition to Defendants' motion for summary judgment (Pl.'s Opp'n, ECF Nos. 100-102). Defendants filed a reply in their cross-motion for summary judgment on September 7, 2012. (Defs.' Reply, ECF No. 107.)[1]

Plaintiff's said motion and Defendants' said cross-motion are deemed submitted pursuant to Local Rule 230(l).

For the reasons set forth below, the Court recommends that Plaintiff's motion for summary judgement be denied and Defendants' cross-motion for summary judgment be granted.

## II. STATEMENT OF FACTS

### A. Plaintiff's Position

While housed at Avenal State Prison, Plaintiff was caught in a January 6, 2003 riot. (Jameson Decl., ECF No. 91 at ¶¶ 4, 7.) Plaintiff was attacked by other inmates, shot in the back of his head, and injured further while unconscious. (Id. at ¶¶ 7, 10.)

Because he believed the Medical Technical Assistant ("MTA") was friendly with the guards who instigated the fight, Plaintiff did not disclose the full extent of his injuries to the MTA; instead he filed an administrative appeal for medical care after the incident. (Jameson Decl. at ¶ 12.) Plaintiff had broken ribs, swelling in his head, and broken hand bones. (Id. at ¶ 13.)

Plaintiff was seen by Defendant Perry on January 10, 2003, but no x-rays were taken. (Id. at ¶¶ 15, 16.) Defendants Perry and Rees did provide aspirin or Tylenol. (Id. at

---

[1] Plaintiff also filed an opposition to Defendants' reply on September 27, 2012. (ECF No. 109.) No such filing is authorized by FRCP 78 or by Local Rule 230 which deems the motion submitted on submission of the reply. Accordingly, Plaintiff's opposition to defendants reply has not been considered.

¶ 20.)[2] Plaintiff filed numerous appeals regarding ongoing pain, swelling in his head, and improper healing of his hand  (Id. at ¶¶ 12, 13, 14, 15, 17, 18, 19.)  It took five weeks to have his hand x-rayed.  (Id. at ¶ 20.)  Plaintiff continues to have lingering pain and injury from the incident.  (Id. at ¶¶ 21, 22.)

**B.     Defendants' Position**

Plaintiff was involved in a riot on January 6, 2003. (Am. Compl., ECF No. 31 at 12.) Plaintiff was examined by the MTA who found Plaintiff had only suffered superficial injuries in the incident.  (Perry Decl., ECF No. 95-3 at ¶ 4.)

Plaintiff received follow up care from Defendant Perry, a physician licensed by the State of California, during a routine medical visit on January 10, 2003. (Perry Decl. at ¶¶ 1, 5.) Defendant Perry saw Plaintiff for his hypertension and lipid problems, and Plaintiff told him that injuries in the riot had left him with chest and hand pain.  (Id. at ¶ 6.) Defendant Perry examined Plaintiff's ribs and lungs, found his neuro-vascular and motor functions within normal limits, and prescribed Tylenol for Plaintiff's pain. (Id. at ¶¶ 6-12.) Defendant Perry also treated Plaintiff for a rash, hypertension, and elevated cholesterol. (Id. at ¶¶ 14-15.)  Defendant Perry examined Plaintiff again on January 17, 2003 and prescribed additional pain medication.  (Id. at ¶ 12.)  Doctor Yen saw Plaintiff on January 24, 2003 for additional medical care and ordered an x-ray of Plaintiff's hand.  (Id. at ¶ 20.) The x-ray showed a fracture but of a kind that usually heals on its own.  (Id. at ¶¶ 21-23.)

---

[2] In his opposition to Defendants' cross-motion, Plaintiff for the first time suggests that he is allergic to Tylenol.  (Pl.'s Opp'n at 12.)  Plaintiff refers to Exhibit 1 of Defendant Perry's declaration, the "Medical Report of Injury or Unusual Occurrence" created by the MTA immediately after the January 6, 2003 incident.  (Perry Dec'l at Ex. 1.)  On the document, under the area for "Known Allergies", it states "NKDA" and "RX=Tylenol BD RX."  (Id.)  However, "NKDA" is often seen to indicate "no known drug allergies".  Further, it appears that someone mistakenly entered Plaintiff's Tylenol prescription in this section.  Defendant Perry asserts that a few days afer the document was created, he "ordered a prescription-strength dosage of Motrin and increased [Plaintiff's] dosage of Tylenol." (Perry Dec'l at ¶ 18.) Reading the evidence and Plaintiff's allegations together, it appears that: the MTA who first examined Plaintiff recorded that Plaintiff had no allergies and prescribed Tylenol; Defendant Perry saw Plaintiff soon thereafter and prescribed Motrin and more Tylenol; on examining Defendants' evidence in support of their cross-motion for summary judgment, Plaintiff saw the language regarding Tylenol and interpreted it as aforesaid and thus as further support for his claim of inadequate medical care.  The evidence does not support Plaintiff's claim that he was allergic to Tylenol.  Defendants' evidence refutes that claim.  There is no basis for Plaintiff's new claim that prescribing Tylenol was inappropriate.

3

Plaintiff was also treated by Defendant Rees, a physician licensed by the State of California. (Rees Decl., ECF No. 95-4, ¶ 1, 5.) Defendant Rees reviewed Plaintiff's inmate appeal regarding his injuries, responded to it, and ordered a hand x-ray. (Id. at ¶ 5.) On February 14, 2003, Defendant Rees arranged for Plaintiff to be seen by an orthopedic surgeon four days later. (Id. at ¶¶ 7-8.) Defendant Reese examined Plaintiff's hand and skull again on March 21, 2003, and concluded further treatment was unnecessary. (Id. at ¶ 10-14.) When Defendant Rees saw Plaintiff on April 18, 2003, Plaintiff complained about his blood pressure and problems sleeping, but not about problems in his fingers or hand. (Id. at ¶ 16.) Defendant Rees treated the blood pressure and sleeping complaints. (Id.) He also noted that Plaintiff's hand fracture was of a type that tends to heal well without impairment of function. (Id. at ¶ 18.)

Defendants object to Plaintiff's expressing opinions as to the propriety of treatment decisions by Defendants who are licensed physicians. (Defs.' Opp'n and Mot. Summ. J. at 8-9.) Their expert medical opinion is that the pain medication prescribed for Plaintiff was sufficient for Plaintiff's head and hand injuries and surgery was never required. (Id. at 8-9,11.)

### III. LEGAL STANDARDS

#### A. Legal Standard for Summary Judgment

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). While the Court *may* consider other materials in the record not

cited to by the parties, it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Johnson v. Poway Unified School Dist., 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

### B.  Legal Standard for Inadequate Medical Care

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

In addition to a serious medical condition, Plaintiff must also establish deliberate

indifference. To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

## IV.  DISCUSSION

### A.  Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on Defendants' alleged failure to provide him with adequate medical care. Plaintiff's motion for summary judgment should be denied. Plaintiff cannot affirmatively demonstrate that no reasonable trier of fact could find other than for him.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Head and chest pain and a fractured bone in the hand can inhibit ones ability to function and necessitate medical care and, as such, are considered to constitute "serious medical needs" within the Eighth Amendment standard. Jett, 429 F.3d at 1091 (the first prong of an Eighth Amendment claim for inadequate medical care can be met by a demonstration that failure to treat the condition could result in the "wanton infliction of pain").

Plaintiff contends further that Defendants Perry and Rees clearly knew of and disregarded an excessive risk to Plaintiff's health and, as such, showed deliberate indifference to these serious medical needs. (Pl.'s Mot. Summ. J. at 5.) Specifically,

1  Plaintiff alleges Defendants only performed preliminary examinations, failed to provide
2  proper follow up care, delayed taking x-rays, and left Plaintiff in pain.  (Id.)  Plaintiff's
3  claims in this regard appear to rest exclusively upon Plaintiff's personal opinion, an opinion
4  he is not shown to be trained or qualified to provide.  There is no competent expert opinion
5  or other evidence to support them.

6  Defendants Perry and Rees both aver under oath that they examined Plaintiff's
7  alleged injuries and treated them as they, in their trained and experienced medical opinion,
8  saw fit.  (Perry Dec'l at ¶ 26; Rees Dec'l at ¶ 22.)  Defendant Perry saw Plaintiff soon after
9  the riot and found he required only pain medication for hand and chest injuries.  (Perry
10 Dec'l at ¶¶ 9, 12.)  Defendant Rees responded to Plaintiff's appeal approximately a month
11 later and ordered hand x-rays.  (Rees Dec'l at ¶ 5.)  He then reviewed the x-ray report and
12 referred Plaintiff to the orthopaedic clinic.  (Id. at ¶ 8.)  Plaintiff made no complaints of hand
13 pain when seen by Defendant Rees on April 18, 2003.  (Id. at ¶¶ 11, 16.)  Defendant Rees
14 also examined Plaintiff's skull and concluded in his professional judgment that further
15 treatment and diagnostic procedures were unnecessary.  (Id. at ¶ 12.)

16 In short, the sworn evidence is that both Defendants, qualified experts in the area
17 of physician's standard of care, examined Plaintiff for the complaints he presented to them
18 at the time and, in their expert opinion, treated them properly and in accordance with good
19 medical practice and training.  There is no competent opinion evidence to the contrary:
20 Plaintiff is not qualified to render expert opinion on the subject.  Plaintiff may not offer as
21 evidence his own opinion on matters which require scientific, technical, or other specialized
22 knowledge.   Fed. R. Evid. 701, 702.  Since there is no competent evidence that
23 Defendants actually disregarded an excessive risk of serious harm to Plaintiff's health,
24 Plaintiff's motion for summary judgment motion should be denied.

25 **B.    Defendants' Motion for Summary Judgment**

26 Defendants move for summary judgment on the grounds that the only competent
27 evidence in the record is that they were not deliberately indifferent to Plaintiff's serious
28 medical needs and also because they are, in any event, protected by qualified immunity.

7

The substantive criteria for evaluating Defendants' motion are the same as in Plaintiff's motion – whether Defendants acted with deliberate indifference to Plaintiff's serious medical needs – as per Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

As noted, it appears Plaintiff had serious medical needs. As similarly noted, there is no competent evidence Defendants failed to provide adequate treatment.

Plaintiff alleges that Defendants showed deliberate indifference by not immediately x-raying his injured hand, by not doing radiologic studies of his head, and by providing him only with aspirin and Tylenol as treatment. (Pl.'s Mot. Summ. J. at 5.) The only competent opinion evidence on the subject comes from Defendants who, as trained and licensed medical doctors who re-reviewed the medical evidence, report that at no time did their care reflect indifference to Plaintiff's medical needs. The Court's review of the record is fully supportive of this conclusion.

Immediately after the incident, Plaintiff met with a MTA who noted Plaintiff had small cuts and no signs of "acute distress." (Perry Dec'l. at ¶ 4, Ex. 1.) Plaintiff alleges he did not disclose all of his injuries to the MTA because he feared he was friends with guards who instigated the incident. (Jameson Dec'l at ¶ 12.) Defendants cannot be said to have been deliberately indifferent to symptoms which went undisclosed by Plaintiff.

Plaintiff's medical appeal reporting continuing symptoms led Defendant Perry to meet with and examine Plaintiff on January 10, 2003, a mere four days after the incident and the MTA determination that Plaintiff had no serious injury. (Perry Dec'l. at ¶ 5; Jameson Dec'l. at ¶ 14.) Defendant Perry examined Plaintiff's ribs, hand, and motor functions and prescribed Tylenol for pain. (Perry Dec'l. at ¶¶ 6-12.) He also treated other conditions unrelated to the incident, including a prior knee condition, a rash, hypertension, and elevated cholesterol levels. (Perry Dec'l. at ¶¶ 13-16.) Such prompt response and treatment is antithetical to a "deliberate indifference". Moreover, Defendant Perry saw Plaintiff again on January 17, 2003 and prescribed Motrin in response to continued pain and insomnia complaints. (Id. at ¶¶ 17-18.) There is a dispute as to whether Plaintiff complained to Dr. Perry of head injuries (Perry Dec'l. at ¶ 13-16 versus Pl.'s Reply at 11).

1  The medical records identify no such complaint.  They do reflect Defendant Perry's
2  examination of Plaintiff and treatment of his pain complaints with Motrin and Tylenol.
3  Again, such facts belie a claim of medical indifference.

4  It may be that Plaintiff thought then and continues to think now that greater or
5  different medical care should have been provided, but there is no qualified evidence in the
6  record to support such a claim and, in any event, a mere difference of opinion between a
7  prisoner-patient and prison medical authorities, or even between qualified medical
8  practitioners, regarding treatment does not give rise to a § 1983 claim.  See Franklin v.
9  Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.
10 1989) (even a difference of opinion between medical professions concerning what medical
11 care is appropriate does not amount to deliberate indifference).

12 Similarly Defendant Rees met with and treated Plaintiff on several occasions.  He
13 met with him on February 7, 2003 in response to his inmate appeal (Rees Dec'l. at ¶¶ 4-5;
14 Jameson Dec'l. at ¶ 17) and ordered a hand x-ray.  He saw him twice again in February
15 2003 and referred him to an orthopedic surgeon  (Rees Dec'l. at ¶¶ 5-8) and again on
16 March 21, 2003, in response to another grievance (id. at ¶ 10).  Defendant Rees reviewed
17 Plaintiff's x-ray report, examined Plaintiff's hand, diagnosed a minor deformity and referred
18 Plaintiff back to an orthopedic surgeon.  (Id. at ¶ 11.)  (According to Rees, a fracture of a
19 fifth metacarpal like Plaintiff's tends to heal well without any impairment of function.  (Id.
20 at ¶¶ 17-18.))  Dr. Rees did a skull exam and concluded a MRI was unnecessary.  (Id. at
21 12.)  When Defendant Rees saw Plaintiff again on April 18, 2003, Plaintiff complained
22 about blood pressure and trouble sleeping, but not about pain.  (Id. at 16.)  Defendant
23 Rees prescribed medication to treat Plaintiff's symptoms.  (Id.)

24 Thus, the evidence is that Defendant Rees, like Defendant Perry, undertook to
25 respond to Plaintiff's complaints and treat his symptoms.  While Plaintiff believes the
26 treatment should have been more aggressive and come quicker, Plaintiff is not qualified
27 to give opinion evidence that the care was inadequate, much less deliberately indifferent.

28 It is noted that Plaintiff also alleges he was never given the recommended

orthopedic evaluation. (Pl.'s Opp'n at 13.) Absent evidence that Defendants did something to interfere with the suggested evaluation, this allegation does not reflect adversely on Defendants but rather suggests that someone else may have interfered with prescribed medical care.

Defendants' objection to Plaintiff's reference to a medical text, the Merck Manual, to show that Plaintiff's hand injury was serious (Defs.' Evidentiary Objections, ECF No. 107-1 at 4) is well-taken. The text is inadmissible hearsay under Fed. R. Evid. 803(18) and, even otherwise, without expert explanation of its relevance to Plaintiff's particular injury, unenlightening.

Plaintiff also refers to the fact that another doctor at another facility to which Plaintiff was transferred provided treatment different than that provided by defendants. (Pl.'s Reply at 14). A difference of medical opinion reflects deliberate indifference only where the objected-to course of treatment was medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to the prisoner's health. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). There is no such evidence here.

Plaintiff's allegations and evidence do not competently dispute Defendants' evidence that they provided adequate treatment under the Eighth Amendment and as such that they necessarily did not act with deliberate indifference. There is no genuine dispute as to any material fact on this issue. Defendants Perry and Rees' cross motion for summary judgment should be granted.

**V.  CONCLUSION AND RECOMMENDATION**

For the reasons set forth herein, the Court RECOMMENDS that Plaintiff's motion for summary judgment, filed on May 29, 2012, (ECF No. 91) be DENIED and Defendants' cross-motion for summary judgment, filed on July 5, 2012, (ECF No. 95) be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document

should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within **seven (7) days** after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   December 21, 2012         /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE